***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDRA GRICE,<br><br>             Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social<br>Security,<br><br>             Defendant. | Civil Action No. 20-02804 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Sandra Grice ("Plaintiff") appeals from the final decision of the Commissioner of Social Security, Andrew Saul ("Defendant"), denying Plaintiff disability benefits under Titles II and XVI of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and, accordingly, the ALJ's decision is **AFFIRMED**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on April 22, 1959, and she was 56 years old on the alleged disability onset date of June 15, 2015, making her an individual of advanced age as defined in the Code of Federal Regulations. (Administrative Record ("A.R.") 67; *see* 20 C.F.R. §§ 404.1563(e), 416.963(e)). Plaintiff completed two years of college and previously worked as a coordinator for an emergency medical services company, as well as operated phones and performed sales work for various businesses, including a telephone answering service, a software company, and a car

1

dealership.  (A.R. 23-24, 248-49.)  Plaintiff continued to work after the alleged onset date of June 15, 2015; however, the ALJ found that Plaintiff's earnings from these multiple jobs did not rise to the level of substantial gainful activity.  (A.R. 17-18.)

Plaintiff filed applications for disability benefits and supplemental security income on April 5, 2016, based on her physical and mental ailments, including spinal stenosis, bilateral knee arthritis (in addition to other unspecified knee problems), hypertension, hypothyroidism, depression, and anxiety.  (A.R. 15, 202-13, 247-48.)  Plaintiff's applications were denied initially and upon reconsideration.  (A.R. 119-24, 130-132.)  Following these denials, Plaintiff was granted a hearing before Administrative Law Judge William J. King Jr., which was held on October 9, 2018.  (A.R. 30.)  After this hearing, the ALJ determined that Plaintiff was not disabled under the relevant statutes.  (A.R. 12-24.)  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 21, 2019, and as a result, Plaintiff filed the instant Complaint on March 13, 2020.  (A.R. 4-9; ECF No. 1.)

### A. Review of Mental Health Evidence

The record establishes that Plaintiff had been treated for anxiety and depression as early as 2014, the year before her alleged onset date.  (A.R. 375, 401-03, 475.)  In November 2014, Plaintiff visited the emergency room complaining of anxiety.  (A.R. 476.)  She reported that she had switched to a new doctor who would not provide her Xanax, a medication which helped alleviate her anxiety.  (A.R. 476.)  Plaintiff again reported her anxiety to her family care provider at Southern Jersey Medical Center in late 2015 and early 2016, where she was continued on medication.  (A.R. 387-91.)  In July 2016, during a behavioral health screening in preparation for a potential gastric bypass surgery, Plaintiff was diagnosed with anxiety and instructed to see a psychiatrist for treatment.  (A.R. 645-46, 648.)

During these same years, Plaintiff was treated at RA Pain Services for her back pain. While her doctors noted a history of depression, they commented that Plaintiff had repeatedly passed psychiatric checks without concern. (A.R. 307-08, 313-14, 319-20, 323-24, 330, 336-37, 342-43, 348-49, 354-55, 360-61, 366-67, 372-73, 513-14, 520-21, 527-28, 534-35, 541-42, 548-49, 555-56, 563-64, 571-72, 578.) Specifically, Plaintiff demonstrated to the doctors that she was oriented to person, place, and time; had a cooperative attitude; was easily responsive to visual, verbal, and tactile stimulation; was able to communicate normally; had a normal memory, concentration and attention span, language and fund of knowledge; had a normal level of consciousness, judgment, insight, mood, and affect; and had the capacity for sustained mental activities. (A.R. 314-15, 320-21, 325-26, 331-32, 337-38, 343-44, 349-50, 355-56, 361-62, 367-68, 373-74, 515-16, 522-23, 529- 30, 536-37, 543-44, 550-51, 557-58, 565-66, 573-74.)

On July 27, 2016, at the request of the State of New Jersey Division of Disability Determination Services, Dr. Juan Cornejo, D.O., conducted a physical consultative examination of Plaintiff in connection with her application for Social Security benefits. (A.R. 483.) Dr. Cornejo reported that Plaintiff was awake, alert, and oriented to time, place, and person; spoke clearly and coherently; had a goal-oriented thought process, intact comprehension, repetitive functions, mood, affect, concentration, and memory functions; and demonstrated no expressive or receptive aphasia, dysarthria, stuttering, involuntary vocalizations, cognitive limitations, or abnormalities in thought processing. (A.R. 486.) Plaintiff was cooperative during the examination and demonstrated no "significant organic involvement or emotional overlay." (*Id*.)

Plaintiff also underwent a state agency consultative examination with Dr. William Dennis Coffey, Psy.D., on September 21, 2016. (A.R. 493-47.) Plaintiff expressed her reluctance to leave her home or do activities alone or with family, but she also stated that she leaves home to visit her

3

granddaughters and was planning an upcoming trip with her father. (A.R. 494-95.) Plaintiff reported that her typical day is spent at home caring for her four cats; that she does her own cleaning, cooking, and shopping; and that she attends dinners, holiday gatherings, and movies with friends and family. (A.R. 495.) Plaintiff also reported her depression, but she admitted that she had never received any specialized psychiatric treatment, despite having been treated by her previous primary care provider. (A.R. 493.)

Dr. Coffey noted that Plaintiff was casually dressed, drove herself to the appointment unaccompanied, and had no issues with filling out the basic information form. (A.R. 496.) Plaintiff also related normally to the examiner, presented no difficulties during the examination, and displayed normal eye contact, stream of conversation, speech quality, mood, and affect. (*Id.*) Plaintiff showed no signs of obsessions, compulsions, or violent thinking. (*Id.*) Dr. Coffey also noted that Plaintiff's effort and performance on the mental diagnostic tasks were adequate. (*Id.*) For example, Plaintiff was oriented in three spheres; had intact attention; was able to recall the examiner's name; was able to correctly name the current President, but incorrectly offered "Clinton" as the former; was able to perform serial sevens and mathematical calculations; and demonstrated good proverb interpretation. (*Id.*)

Following Dr. Coffey's evaluation, Plaintiff's records were reviewed by state agency psychologist Sharon Flaherty on September 24, 2016. (A.R. 75-76.) Dr. Flaherty opined that Plaintiff had a mild restriction of activities of daily living, mild difficulties in maintaining social functioning and in concentration, persistence, or pace, and no repeated episodes of decompensation, each of extended duration. (A.R. 75.) Ultimately, Dr. Flaherty opined that Plaintiff's mental limitations were mild and non-severe and did not assess any functional

4

limitations. (*Id.*) Dr. Flaherty's opinions were affirmed by state agency psychiatrist H.T. Unger, M.D., on October 26, 2016. (A.R. 102, 112.)

During May and June of 2018, Plaintiff was treated for panic attacks on three occasions. (A.R. 604-11.) Plaintiff reported experiencing stress related to her job at the time,[1] and she requested that Xanax be prescribed to her; however, the provider was unable to prescribe the drug and explained that Plaintiff may need to speak with a psychiatrist. (A.R. 609.) Plaintiff eventually reported that her work environment improved after a discussion with her supervisor about her condition; Plaintiff's anxiety and depression improved as well. (A.R. 604-06.)

### B.  Review of Testimonial Record

#### i.  *Plaintiff's Testimony*

At the October 9, 2018 hearing, before ALJ William J. King, Jr., Plaintiff testified that she has suffered from depression and anxiety for roughly ten years. (A.R. 54-55.) Plaintiff testified that she felt anxious while at work, but that she managed to interact with coworkers and the public in spite of her anxiety by adopting a professional demeanor. (A.R. 54.) In regard to her personal life, Plaintiff testified that although she corresponds with close friends via text message, she will sometimes opt out of in-person social events due to her anxiety. (A.R. 46, 55.) Additionally, Plaintiff testified that she speaks with her family members often, reads articles online, and manages her personal finances, though her ability to concentrate has diminished. (A.R. 46-47, 58-59.)

#### ii.  *Vocational Expert's Testimony*

The Vocational Expert, Marilyn Stroud (the "VE"), began her testimony by classifying Plaintiff's past jobs according to the Dictionary of Occupational Titles ("DOT"). (A.R. 61.)

---

[1] The record appears to indicate that Plaintiff worked for a company called "Servicecom" during this period; however, her period of employment was short, and, as mentioned above, *supra*, the ALJ found that it did not meet the requirements of substantial gainful employment.

5

Specifically, the VE classified Plaintiff's past work as an emergency medical services coordinator under DOT code 079.117-010, a skilled job with an SVP skill level of 8 and a light exertion level. (A.R. 61-62.)  Plaintiff's later jobs performing telephone work were classified under two categories, those of "telephone solicitor" (DOT code 299.357-014) and "telephone answering service operator" (DOT code 235.662-026), both semi-skilled jobs reflecting an SVP skill level of 3 and a sedentary level of exertion. (A.R. 62.)

> The ALJ proceeded to ask the VE the following hypothetical question:
>
> > [A]ssume that there is an individual of the Claimant's age, education, and work experience who is limited to lifting and carrying 20 pound occasionally and 10 pounds frequently; standing and walking up to an aggregate of four hours in an eight-hour day; and sitting up to six hours in an eight-hour day, with the opportunity to change posture from sitting to standing and back as frequently as every 30 minutes while remaining on task.  Further limited to occasional climbing of ramps and stairs . . .; occasional balancing, stooping; and no kneeling, crouching and crawling; and no climbing ladders, ropes, or scaffolds.  Further limit it to work that would not involve concentrated exposure to cold, nor require any exposure to unprotected heights, moving mechanical parts, or other potential workplace hazards.  Could such an individual perform any of the Claimant's past work?

(A.R. 63.)  The VE responded that such an individual could perform all of Plaintiff's former work. (*Id*.)  In response to further inquiries from the ALJ, the VE also explained that employers will tolerate absence no more than once per month and employees being off-task no more than 15% of the time in unskilled work not dealing with "money, monetary issues, or safety issues," no more than 10% of the time in semi-skilled work and unskilled work dealing with "money, monetary issues, or safety issues," and no more than 5% of the time in skilled work. (A.R. 64.)

Plaintiff's counsel subsequently posed to the VE the following amended version of the ALJ's first hypothetical:

> [I]f we were to add on the limitation that this individual would be limited to simple, routine tasks and further, only occasional interactions with coworkers, supervisors, and the general public, would that impact the ability to return to [Plaintiff's] past work?

(A.R. 64.) The VE responded that, because Plaintiff's past work all involves skill levels of "semi-skilled" or higher, which requires interaction with the public on a frequent basis, such an individual would be unable to perform Plaintiff's past work. (A.R. 64-65.)

### C. The ALJ's Findings

After the hearing, the ALJ issued a written decision on November 28, 2018, analyzing whether Plaintiff satisfied her burden of demonstrating disability using the standard five-step process. (A.R. 12-28.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 15, 2015. (A.R. 17-18.) At step two, the ALJ found that Plaintiff has severe impairments in the form of degenerative disc disease of lumbar spine, degenerative joint disease of the right knee, and morbid obesity, in addition to the non-severe impairments of diabetes mellitus type II and hypertension. (A.R. 18.)

In regard to Plaintiff's mental health, the ALJ found Plaintiff's generalized anxiety disorder and depressive disorder to be non-severe. (*Id.*) The ALJ first noted the State agency psychological consults' findings that Plaintiff's impairments were not severe and placed great weight on these opinions "as they are consistent with the medical evidence showing minimal mental health treatment, as well as the findings at the [Plaintiff's] psychological consultative examination . . . ." (*Id.*) Furthermore, the ALJ found that the Plaintiff's mental health disorders, "considered singly and in combination, do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe." (*Id.*) In arriving at this judgment, the ALJ considered the four areas of mental functioning described in the disability regulations for

assessing mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1), known as the "Paragraph B" criteria. (*Id*.)

The first functional area considered by the ALJ is "understanding, remember, or applying information." (*Id*.)  The ALJ found that Plaintiff had a mild limitation in this area, citing her testimony that she could cook, manage her finances, and read articles online. (*Id*.)  The ALJ also relied on Dr. Coffey's opinion that Plaintiff could follow the topic of conversation throughout Plaintiff's consultative examination, recall the examiner's name, identify the current President though not the former, recall seven digits forward and five backward, and repeat three out of three objects immediately and two after a delay. (*Id*.)

Second, the ALJ considered Plaintiff's ability to interact with others and found that she had a mild limitation. (A.R. 19.)  The ALJ cited Plaintiff's testimony that she lives with her father, interacts with friends online, and can shop in stores. (*Id*.)  Furthermore, the ALJ noted Plaintiff's cooperative nature during her consultative examinations. (*Id*.)

The third functional area considered by the ALJ is "concentrating, persisting, or maintaining pace." (*Id*.)  The ALJ found that Plaintiff had a mild limitation in this area, relying on her testimony that she could cook, manage her finances, read articles, and shop in stores as well as her demonstrated ability to follow a conversation and perform serial sevens and simple math calculations in her July and September 2016 examinations. (*Id*.)  The ALJ considered Plaintiff's panic attacks in 2018, but he noted that her symptoms improved with the use of medication. (*Id*.)

Lastly, the ALJ considered Plaintiff's ability to adapt and manage herself, finding that Plaintiff had a mild limitation in this area. (*Id*.)  The ALJ relied on Plaintiff's testimony that she could manage her personal care, perform certain household chores, cook, drive, and shop, as well as the fact that her anxiety symptoms improved with medication. (*Id*.)

8

Applying the Paragraph B criteria, the ALJ found that Plaintiff's mental limitations, in the aggregate, do not cause more than a mild limitation in any of the functional categories; accordingly, the ALJ found Plaintiff's mental limitations to be non-severe. (*Id*.)  Finally, the ALJ clarified that the analysis of the four functional categories does not constitute a residual functional capacity ("RFC") assessment and explained that the subsequent RFC analysis would reflect the degree of limitation found in the Paragraph B mental function analysis. (*Id*.)

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the relevant CFR section. (*Id*.)  The ALJ subsequently provided his assessment of Plaintiff's RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in [the relevant CFR sections]. . . .  She can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to four hours in an eight-hour workday; and sit for up to six hours in an eight-hour workday.  Furthermore, she requires a sit/stand option as frequently as every 30 minutes while remaining on task.  Additionally, she can occasionally climb ramps and stairs, balance and stoop; and never kneel, crouch, crawl, and climb ladders, ropes or scaffolds.  She must also avoid concentrated exposure to extreme cold; and no exposure to unprotected heights, moving mechanical parts and other potential workplace hazards.

(A.R. 20.)  The ALJ specified that this RFC assessment was made after considering "all symptoms and the extent to which these symptoms can reasonable be accepted as consistent with the objective medical evidence and other evidence. . . ." (*Id*.)

With regard to Plaintiff's mental limitations, the ALJ noted that Plaintiff "did not offer any formal opinions concerning her **mental** or physical residual functional capacities from any of her own treating or examining physicians." (A.R. 23) (emphasis added).  The ALJ did not make additional reference to Plaintiff's mental limitations during the RFC assessment. (A.R. 20-24.)  At

9

step five, the ALJ found that Plaintiff was capable of performing her past relevant work and finally concluded that Plaintiff was not under a disability as defined in the Social Security Act. (A.R. 24.)

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294, 122 L. Ed. 2d 685 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id*. at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id*. at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching,

carrying or handling." *Id*. A claimant who does not have a severe impairment is not considered disabled. *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id*. at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id*. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant can perform past relevant work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*,

482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

### III. <u>PLAINTIFF'S CLAIMS ON APPEAL</u>

Plaintiff challenges the ALJ's disability determination, contending that the ALJ committed reversible error by not accounting for Plaintiff's mild mental limitations during his assessment of Plaintiff's RFC. (*See* Plaintiff's Moving Brief ("Pl. Br.") at 5-9.) Relatedly, Plaintiff argues, in cursory fashion, that the ALJ failed to include her mental limitations in his hypothetical questions to the VE. (*Id*. at 9.) The Court considers these arguments, in turn.

#### A. The ALJ'S RFC Determination

Plaintiff contends that the ALJ committed reversible error of law by failing to account for Plaintiff's mild limitations with regard to understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself when assessing Plaintiff's RFC. (*See* Pl. Br. 5-9.) Plaintiff does not challenge the ALJ's finding that her depressive disorder and generalized anxiety disorder constitute non-severe impairments or that the mental limitations caused by these impairments are more severe than the "mild" assessment given by the ALJ. (*See generally* Pl. Br. 5-9.)

"[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a). When a case is brought to an administrative hearing, the ALJ is charged with ultimately determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e),

13

416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). "[I]n making a residual functional capacity determination, the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. When assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments which are supported by the record, including those considered non-severe. 20 C.F.R. §§ 404.1545 (a)(2), 416.945 (a)(2); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d. Cir 2005). "Where the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted).

As set forth above, at step two, the ALJ found that the Plaintiff's mental health disorders, "considered singly and in combination, do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe." (A.R. 18.) In arriving at this conclusion, the ALJ relied heavily upon the State agency psychological consultants' opinions that Plaintiff's impairments were not severe, because "[their findings were] consistent with the medical evidence showing minimal mental health treatment, as well as the findings at the [Plaintiff's] psychological consultative examination . . . ." (*Id*.) Such findings, the ALJ noted, included Dr. Coffey's observation that Plaintiff "could follow the topics of

14

conversation during her [consultative] interview; was able to recall the examiner's name; identify the current President though not the former; recall seven digits forward and five backward; and repeat three out of three objects immediate and two after a delay." (*Id*.)

Additionally, when discussing the four Paragraph B categories of mental limitation, the ALJ relied on Plaintiff's own testimony to conclude that she had no more than a mild limitation in any of the Paragraph B categories. (A.R. 18-19.) For example, the ALJ noted Plaintiff's testimony that she could cook and attend to other simple household chores, manage her finances, shop in stores, and drive, as well as her reports that she speaks frequently with her friends online and with her family via telephone. (*Id*.) Further, the ALJ cited Plaintiff's testimony that her anxiety symptoms improved with the use of medication. (A.R. 19.) As such, the ALJ credibly relied upon substantial evidence presented in the medical records and trial testimony when assessing the severity of Plaintiff's mental limitations.

But most importantly, the ALJ also recognized that the step two analysis is separate and distinct from the RFC assessment performed later in the sequential analytical process; accordingly, the ALJ included specific language which incorporated his step two findings into his RFC, writing that "the following [RFC] assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis." (A.R. 19.) Furthermore, the ALJ began his RFC assessment by explaining that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including opinion evidence. (A.R. 20.) As mentioned above, the ALJ went on to note that Plaintiff "did not offer any formal opinions concerning her **mental** or physical residual functional capacity. . . [t]hus, in terms of functional capacity, the record does not contain any opinions from treating or examining physicians indicating that the claimant has limitations that

would justify a determination of disability[.]" (A.R. 23) (emphasis added). This demonstrates that the ALJ considered the effects of all of Plaintiff's credibly-established and uncontradicted medical conditions in his RFC assessment, including the mild mental limitations discussed during his step two analysis.

While the ALJ did not discuss Plaintiff's mild mental limitations any further in his RFC analysis, this is far from reversible error. Rather, it can be attributed to the ALJ's decision to minimize discussion of conditions that "do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities." (A.R. 20-23). In that regard, Plaintiff does not present, nor has this Court independently reviewed, any case law to suggest that an ALJ must, under all circumstances, explicitly discuss a claimant's mild mental limitations during his RFC analysis.[2] (*See generally* Pl. Br. at 5-9, Plaintiff's Reply Brief ("Reply Br.") at 1-3); s*ee Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) (finding that established functional limitations do not "dictate the terms" of the RFC analysis and that a formal recitation requirement "would lead to the hidebound circumstance in which an [ALJ] would have to "chant every magic word correctly" or an otherwise thorough and well-reasoned opinion "would have to be remanded. . . [t]he law makes no such demand.") (citations omitted); *see also Biestek v. Berryhill*,

---

[2] The Court reiterates that the mental limitations at issue here were found to be mild, and that Plaintiff does not challenge the ALJ's classification of those limitations. Further, the Court notes that the ALJ's decision sufficiently considers how Plaintiff's mental impairments affect her RFC and her capability to perform past relevant work. *See Curry v. Comm'r of Soc. Sec.*, No. 15-07515, 2017 WL 825196, at *4 (D.N.J. Mar. 2, 2017) (remanding based on the ALJ's failure to consider or address the impact of the plaintiff's mental limitations on her ability to perform prior work); *see also Carratura v. Saul*, No. 20-05483, 2021 WL 4077565, at *1 (D.N.J. Sept. 8, 2021). Indeed, in providing his RFC, the ALJ found Plaintiff "did not offer any formal opinions concerning her mental or physical residual functional capacities from any of her own treating or examining physicians. Thus, in terms of functional capacity, the record does not contain any opinions from treating or examining physicians indicating that the claimant has limitations that would justify a determination of disability, or even that she has any limitations greater than those determined in this decision[.]" (A.R. 23.)

16

139 S. Ct. 1148, 1157 (2019) ("Where Biestek goes wrong, at bottom, is in pressing for a categorical rule[.] … The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case.")  Thus, I am satisfied that the ALJ relied upon substantial evidence in his RFC determination and committed no error by omitting a more detailed discussion of Plaintiff's mental limitations when explaining his RFC determination.

### B. Hypothetical Questions Posed to the VE

Plaintiff also superficially argues that the ALJ erred by not including Plaintiff's mild mental impairments in the ALJ's hypothetical questions to the VE. (*See* Pl. Br. at 7-9.)  However, this argument fails.  As found above, *supra*, the ALJ reasonably declined to include any of Plaintiff's mild mental limitations in his RFC finding.  Where an ALJ does not include an alleged impairment or limitation in his or her RFC determination, the ALJ need not pose that alleged impairment or limitation to the vocational expert.  *See Schmits v. Astrue*, 386 F. App'x 71, 76 (3d Cir. 2010) ("Because that limitation is not in [the claimant's] RFC, the ALJ did not need to consider it at Step Five" in posing a hypothetical to a vocational expert); *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 287 (3d Cir. 2006) (finding that the ALJ did not err in failing to include in his hypothetical questions to the vocational expert "specific reference[s] to [the claimant's] functional loss, *mental limitations*, and subjective complaints of pain and fatigue," where the ALJ had already discredited those alleged impairments, excluding them from his RFC determination) (emphasis added); *Russo v. Comm'r of Soc. Sec.*, No.13–06918, 2014 WL 6991987, at *11 (D.N.J. Dec. 10, 2014) (observing that where "an ALJ has appropriately rejected a limitation, that limitation need not be conveyed to the vocational expert.").  Furthermore, "where a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include the limitation in the hypothetical." *Zirnsak v. Colvin*, 777

F.3d 607, 615 (3d Cir. 2014). Thus, the ALJ's decision to not include Plaintiff's mild mental limitations in his questions to the VE was proper.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision was supported by substantial evidence in the record. Accordingly, the ALJ's decision is **AFFIRMED**. An appropriate Order shall follow.


Dated: October 5, 2021						/s/ Freda L. Wolfson
								Hon. Freda L. Wolfson
								U.S. Chief District Judge